IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Quantum Leap Charters, LLC, | ) | Case No.: 4:24-cv-00271-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| Estate of O.K., | ) | **OPINION** |
| | ) | |
| Defendant, | ) | |
| Brad Knighton, individually and as the Personal Representative of The Estate of O.K., | ) ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Robert Powers and M/V Fear Knot, in rem, | ) | |
| | ) | |
| Third-Party Defendant, | ) | |
| | ) | |
| Britney Knighton, individually and as the Guardian and Parent of O.B.K. And B.E.K., Minors, and of Brad Knighton as the Guardian and Parent of O.B.K. and B.E.K., | ) ) ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Robert Powers, M/V Fear Knot, in rem, | ) | |
| | ) | |
| Third-Party Defendant, | ) | |
| Robert Powers, | ) | |
| | ) | |
| Fourth-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Edward Eldridge, | ) | |
| | ) | |
| Fourth-Party Defendant. | ) | |

This is an admiralty and maritime action arising from a fatal boating incident on July 19, 2023, in the Intracoastal Waterway near Little River, South Carolina. The matter is before the Court on three motions: Claimants' Motion to Amend (DE 91), Petitioner's Motion for Protective Order (DE 98), and Claimants' Motion to Compel (DE 103). Each motion has been fully briefed, and the Court finds the matters are ripe for disposition.

For the reasons below, Claimants' Motion to Amend (DE 91) is GRANTED, Claimants' Motion to Compel (DE 103) is GRANTED IN PART AND DENIED IN PART, and Petitioner's Motion for Protective Order (DE 98) is GRANTED.

## I.     BACKGROUND

### A.     Factual Background

The following facts are drawn from the operative pleadings, including the Third-Party Complaint filed by Brad Knighton, individually and as personal representative of the Estate of O.K., and are accepted as true for purposes of resolving the pending motions. (DE 17.)

This marine casualty involves a commercial charter vessel, the *M/V Fear Knot*, and a smaller recreational vessel operated by Edward Eldridge. On July 19, 2023, O.K., a minor, was a passenger on the recreational vessel along with family members during a vacation in the Myrtle Beach area. (DE 17 ¶¶ 9–11.)

At the same time, the *M/V Fear Knot*—a 63-foot vessel owned and/or operated by Quantum Leap Charters, LLC, and captained by Robert Powers—was navigating the Intracoastal Waterway. (DE 17 ¶¶ 7–8, 14–15.)

According to the Third-Party Complaint, while the recreational vessel was passing alongside the *M/V Fear Knot*, the vessel began moving forward and generated a substantial wake, which struck the recreational vessel and caused multiple passengers to be ejected into the water. (DE 17 ¶¶ 20–23.)

O.K. was thrown from the vessel and, while in the water, was struck by the vessel's propeller, resulting in catastrophic injuries that proved fatal. (DE 17 ¶¶ 25–27.)

Claimants allege that the incident was caused by negligent operation of the *M/V Fear Knot*, including failure to maintain a proper lookout, failure to warn of wake creation, and failure to follow applicable navigation rules and safe seamanship practices. (DE 17 ¶ 39.) They also allege that the conduct of Powers and Quantum Leap caused or contributed to the death of O.K. and the resulting damages.

In contrast, Powers and Quantum Leap contend that the operator of the recreational vessel, Edward Eldridge, was solely or primarily at fault and assert claims for contribution and/or indemnity. (DE 28 ¶¶ 83–85.)

Accordingly, fault for the incident is disputed and may involve multiple actors under principles of comparative fault and maritime liability.

**B.    Procedural Background**

Petitioner Quantum Leap Charters, LLC, initiated this action on January 18, 2024, by filing a complaint for exoneration from or limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501–30512, invoking this Court's admiralty jurisdiction under Rule 9(h). (DE 1.)

On July 9, 2024, Claimants filed claims and Third-Party Complaints asserting negligence, wrongful death, survival, and related claims against Quantum Leap, Robert Powers, and the *M/V Fear Knot* in rem. (DE 16; DE 17; DE 19.)

On August 12, 2024, Powers filed a Fourth-Party Complaint against Edward Eldridge, asserting that Eldridge's conduct contributed to or caused the incident and seeking contribution and/or indemnity under general maritime law. (DE 27; DE 28.)

The Court has addressed related issues here, including granting motions to amend to assert contribution claims and tender Eldridge under Rule 14(c), and striking certain claims for attorneys' fees. (See DE 67; DE 68; 107.)

The case has since proceeded into discovery. The present motions arise from disputes concerning (1) Claimants' request to amend their pleadings to assert other claims and parties (DE 91), (2) the scope of financial and accounting discovery, including requests for QuickBooks data (DE 103), and (3) the permissible scope of testimony from a certified public accountant concerning tax-related information (DE 98).

## II.    LEGAL STANDARD

### A.    Rule 15, Fed. R. Civ. P.

Rule 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a)(2) Fed. R. Civ. P. "This directive 'gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities.'" *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). A request to amend should only be denied if

one of three facts is present: "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir.2006) (en banc). An amendment is futile if the amended claim would fail to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

**B.    Rule 26, Fed. R. Civ. P.**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining whether discovery is proportional to the needs of the case, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Discovery matters are generally committed to the sound discretion of the trial court. As the Fourth Circuit has explained, "[a] district court has wide latitude in controlling discovery and its rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986). This discretion extends not only to the scope but also to the manner in which discovery is conducted. *Id.*

5

Where a party fails to make a disclosure or discovery required by Rule 26, Rule 37(a)(3)(B) authorizes the opposing party to move for an order compelling disclosure or discovery. Before filing such a motion, the moving party must in good faith confer or attempt to confer with the opposing party in an effort to secure the disclosure without court intervention. *See* Fed. R. Civ. P. 37(a)(1). Once the moving party makes a prima facie showing of discoverability, "the burden shifts back to the resisting party to show 'lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under FED.R.CIV.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad discovery.'" *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

## III.    DISCUSSION

### A.    Claimants' Motion to Amend (DE 91)

Claimants move for leave to amend their pleadings to assert other claims and to add Doug Martin, individually, as a party defendant under theories including alter ego and veil piercing. (DE 91.) Petitioner opposes the motion, arguing that the proposed amendment is futile because the claims would not survive a motion to dismiss and would improperly expand the scope of the litigation. (DE 93 at 5–11.)

Under Rule 15(a)(2), leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has instructed that leave should be denied only where the amendment would result in prejudice to the opposing party, is sought in bad faith, or would be futile. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

6

Here, nothing suggests that Claimants acted in bad faith or that the amendment would result in undue prejudice. The motion was filed during the discovery period and is based on information obtained through depositions and document production. (DE 94 at 1–2.) Accordingly, the main issue is whether the proposed amendment would be futile.

An amendment is futile if it would fail to survive a motion to dismiss under Rule 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). In evaluating futility, the Court accepts the well-pleaded factual allegations as true and determines whether the proposed claims are plausibly stated.

### 1.    Sufficiency of Negligence-Based Allegations

Petitioner argues that the proposed claims against Martin fail because he was not present at the time of the incident, owed no personal duty to Claimants, and could not have engaged in the alleged negligent conduct. (DE 93 at 5–6.)

This argument is unpersuasive at the pleading stage. The proposed amended pleading does not rely solely on Martin's personal presence at the time of the marine casualty. Rather, Claimants allege that Martin exercised domination and control over the vessel, the corporate entity, and its sole employee, and structured the company's operations and financial practices in a manner that blurred the distinction between personal and corporate activity. (DE 91-1 ¶¶ 45, 48–52, 63–67, 70–73.)

Under general maritime law, as well as principles of agency and respondeat superior, liability may arise not only from direct conduct but also from control, supervision, and the delegation of operational responsibilities. At the pleading stage,

7

Claimants need not prove that Martin personally navigated the vessel or was physically present at the time of the incident. Instead, they must allege facts supporting a plausible basis for liability.

Here, Claimants allege that Martin exercised pervasive control over Quantum Leap Charters, used corporate assets—including the vessel and its employee—for personal purposes, and operated the entity in a manner that blurred the distinction between personal and corporate affairs. (DE 91-1 ¶¶ 45, 48–52, 63, 70–73.) These allegations, if proven, could support theories of vicarious liability or alter ego liability. Accordingly, the absence of physical presence does not render the claims futile.

### 2.    *Twombly/Iqbal* and Factual Plausibility

Petitioner also contends that the proposed allegations are conclusory and fail to satisfy federal pleading standards. (DE 93 at 6–9.) The Court disagrees. The proposed amended pleading is not limited to bare legal conclusions; it includes detailed factual allegations concerning Martin's relationship with Quantum Leap, the use of corporate assets, the employment arrangement with Powers, and the entity's financial structure. Claimants specifically allege, among other things, that:

- corporate funds were used for personal purposes (DE 91-1 ¶¶ 45–46, 63);
- the vessel was used for non-business activities without compensation (DE 91-1 ¶¶ 70–73);
- the company was undercapitalized and operated at a loss (DE 91-1 ¶¶ 65–67);
- and the sole employee performed substantial personal services unrelated to the business. (DE 91-1 ¶¶ 48–52.)

8

These allegations go beyond "threadbare recitals" and, taken as true, are sufficient to nudge Claimants' theories of liability "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3.     Alter Ego / Veil Piercing as a Basis for Liability

Petitioner argues that alter ego and veil piercing are not standalone causes of action and, therefore, cannot support an amendment. (DE 93 at 9–10.) Petitioner is correct to the extent that, under South Carolina law, alter ego and veil piercing are not independent causes of action, but rather doctrines through which liability may be imposed on an underlying claim. *See Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 103–04, 668 S.E.2d 798, 801 (2008) (explaining that veil piercing is a means of imposing liability, not a separate claim).

However, Petitioner's conclusion—that this characterization renders the proposed amendment futile—does not follow from the governing law. *Drury* makes clear that a plaintiff may proceed on an alter ego or veil-piercing theory in the same action as the underlying claims so long as the plaintiff has (1) stated a viable claim against the corporate entity and (2) alleged sufficient facts supporting the basis for disregarding the corporate form. *Id.* at 104, 668 S.E.2d at 801 ("so long as the plaintiff has pled facts sufficient to survive a motion to dismiss as to the corporate liability claims and the alter ego claim, the trial court should move forward").

Thus, while veil piercing is not a standalone cause of action, it is properly pleaded as a theory of liability accompanying substantive claims, and its inclusion in

a complaint does not render the pleading deficient or subject to dismissal on that basis alone.

Consistent with this framework, South Carolina courts recognize that doctrines such as alter ego, veil piercing, and related theories are equitable mechanisms for imposing liability when the corporate form has been misused. *See Stoneledge at Lake Keowee Owners' Ass'n v. IMK Dev. Co., LLC*, 435 S.C. 109, 121–22, 866 S.E.2d 542, 549 (2021) (describing such doctrines as methods of disregarding the corporate form grounded in equitable principles).

Here, Claimants have asserted substantive claims against the corporate entity and have alleged detailed facts supporting their theory that Martin exercised domination and control, commingled assets, and used the corporate form in a manner that may justify disregarding it. (DE 91-1 ¶¶ 45, 48–52, 63–67, 70–73, 75–76.)

At the pleading stage, the Court's task is not to determine whether veil piercing is ultimately warranted, but whether Claimants have plausibly alleged facts that could support such relief. *See Drury*, 380 S.C. at 104, 668 S.E.2d at 801.

Because Claimants have done so, the fact that alter ego and veil piercing are not independent causes of action does not render the amendment futile.

### 4.     Conclusion as to Futility

In sum, Petitioner's arguments largely challenge the ultimate merits of Claimants' theories rather than the sufficiency of their pleadings. At this stage, Claimants have alleged sufficient facts to state plausible claims and theories of liability against Martin. Moreover, because this action arises under the Limitation of

Liability Act, allegations concerning ownership, control, and the relationship between the corporate entity and its principal bear directly on issues of privity or knowledge, further supporting the relevance of the proposed amendment.

Because the proposed amendment is not futile, and because there is no showing of bad faith or undue prejudice, the liberal standard of Rule 15(a)(2) favors granting leave to amend. Accordingly, Claimants' Motion to Amend (DE 91) is **GRANTED**.

**B.    Claimants' Motion to Compel (DE 103)**

Claimants move to compel production of additional financial and accounting records, including native QuickBooks data for Quantum Leap Charters, LLC. (DE 103.) Petitioner opposes the motion, arguing that the requested discovery is irrelevant, disproportionate, and unduly burdensome, and that its prior production of general ledger reports satisfies its obligations under Rule 34. (DE 104.)

Under Rule 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Once relevance is established, the burden shifts to the resisting party to demonstrate that the discovery is not proportional or is otherwise objectionable. *See Desrosiers v. MAG Indus. Automation Sys., LLC,* 675 F. Supp. 2d at 601.

**1.    Relevance**

Petitioner first argues that detailed financial records are irrelevant because this case arises from a marine casualty and not a business dispute. (DE 104 at 5–6.) The Court disagrees. This case includes a petition for limitation of liability, which places at issue whether the owner lacked "privity or knowledge" of the alleged

11

negligence—a determination that may turn on the owner's involvement in or awareness of the vessel's operations and management. *See* 46 U.S.C. § 30523. Financial and operational records may bear directly on issues such as vessel maintenance, staffing, management control, and operational practices. This includes, for example, records reflecting expenditures on maintenance, payments to personnel, and the flow of funds between the entity and its principal, all of which may inform whether the owner had knowledge of, or involvement in, the conditions that gave rise to the incident.

In addition, as discussed above, the Court has granted Claimants leave to proceed on an alter ego theory. That ruling places squarely at issue the financial structure, capitalization, and operational relationship between the corporate entity and its principal.

Accordingly, financial and accounting records—including underlying transactional data—are relevant within the meaning of Rule 26(b)(1).

### 2. Sufficiency of Prior Production (General Ledger vs. Native Data)

The central dispute is whether Petitioner's production of general ledger reports satisfies its discovery obligations.

Claimants contend that the general ledger is an incomplete summary that omits underlying transactional detail, including metadata, notes, and user information contained within QuickBooks. (DE 103 at 6–7.) Petitioner responds that production of full QuickBooks files is unnecessary and unduly intrusive. (DE 104.)

Rule 34 requires that documents be produced either as kept in the usual course of business or in a "reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E). Courts have recognized that summary reports may be insufficient when the underlying data contain additional relevant information not captured in the summaries.

The Court agrees that, under the circumstances presented here, production limited to general ledger reports is inadequate. Where, as here, the structure, timing, and characterization of financial transactions may bear on issues such as control, commingling, and operational practices, access to underlying data—not merely summarized outputs—is appropriate.

At the same time, the Court declines to require unfettered production of an entire accounting system or unrestricted "access" to QuickBooks.

### 3. Competing Case Law

Both parties cite authority addressing the production of QuickBooks data. Claimants rely on cases in which courts have compelled production of QuickBooks data or files where detailed financial information was central to the claims and could not be fully evaluated through summary reports alone. *See, e.g., Yang Kun Chung*, 321 F.R.D. at 298–99 (revenue data); *French v. Fisher*, 2018 WL 4178328, at *1 (ordering production of complete QuickBooks files in dispute over financial transfers); *Pollack v. Seamus Crowley Constr., Inc.*, 2019 WL 3553426, at *2–3 (finding QuickBooks data relevant to alleged discrepancies and overbilling); *United Subcontractors, Inc. v. Darsey*, 2013 WL 3149072, at *2 (compelling production of financial records maintained in QuickBooks where responsive information had not

13

been produced). While many of these cases arise in business or fraud contexts, they reflect the broader principle that underlying accounting data—rather than summary outputs alone—may be discoverable when necessary to evaluate issues such as financial transactions, internal controls, or the accuracy and completeness of reported information.

Petitioner relies on *Prusin v. Canton's Pearls, LLC*, 2017 U.S. Dist. LEXIS 45384 (D. Md. Mar. 28, 2017), in which the court denied a request to compel production of QuickBooks data. (DE 104 at 5–6.) However, *Prusin* does not establish a categorical rule against producing such materials. Rather, the court denied the request because the requesting party sought a complete backup of the QuickBooks system without adequately specifying the particular records or data sought. As the court emphasized, QuickBooks databases may contain extensive amounts of irrelevant and sensitive information and that requests for such data must be appropriately tailored and specific.

Thus, *Prusin* suggests that wholesale production of an entire accounting system, without limitation, is generally disproportionate—not that underlying accounting data is categorically undiscoverable.

Petitioner's broader contention that QuickBooks discovery is inappropriate in personal injury or wrongful death cases is likewise unpersuasive. The relevance of financial records depends not on the label attached to the case but on the issues presented. Here, the claims and defenses—including limitation of liability and alter ego—place the financial and operational structure of the entity directly at issue.

14

Accordingly, the authorities cited by both parties reinforce that the proper inquiry is one of relevance, proportionality, and tailoring under Rules 26 and 34, rather than a categorical rule permitting or prohibiting production.

### 4.    Burden

Petitioner asserts that production would require engaging third-party consultants and coordinating with multiple accounting firms, and submits an affidavit from its principal in support of that position. (DE 104; DE 104-1.) The affidavit indicates that QuickBooks data is maintained primarily by outside accountants and that Petitioner lacks in-house technical expertise to extract or produce the requested information without incurring additional expense or disruption.

The Court credits these representations to the extent they reflect that some burden may be associated with the production of underlying accounting data. However, the showing remains limited in scope. The affidavit does not quantify the anticipated cost, time, or technical requirements with any specificity, nor does it explain why more targeted exports or reports—short of full system replication—could not be generated through Petitioner's accountants in the ordinary course of business. In particular, Rule 34 contemplates production in a reasonably usable form, and the record does not establish that such production—short of full system access—would impose the level of burden claimed.

While Rule 26 requires the Court to consider burden and expense, generalized assertions—even when presented by affidavit—are insufficient to outweigh the

demonstrated relevance of the requested discovery. At the same time, the Court takes the asserted burden into account in declining to require wholesale production of the entire QuickBooks system and instead ordering a more tailored production.

### 5.     Proportional Resolution

Considering the importance of the issues, the parties' relative access to the information, and the centrality of the requested data to Claimants' theories, the Court concludes that a targeted production of underlying accounting data is appropriate. Petitioner shall produce financial and accounting records sufficient to reflect the revenues, expenses, transactions, and financial operations of Quantum Leap Charters, LLC, for the period January 1, 2021, through December 31, 2023.

This production shall include underlying QuickBooks data to the extent necessary to capture information not reflected in previously produced summary reports, including transaction-level detail, associated descriptions or notes, and identifying information regarding the creation or entry of transactions where such data is maintained in the ordinary course of business. This includes, where available, fields reflecting the transaction date, amount, payee/payor, account classification, memo or description fields, and user or source identification.

Petitioner is not required to produce a complete backup or unrestricted access to its entire QuickBooks system. However, Petitioner may not limit its production to summary documents, such as general ledgers, where additional responsive information exists within the underlying accounting data.

16

To the extent practicable, the data shall be produced in a reasonably usable electronic format (such as native export files or equivalent reports) that preserves relevant transaction-level detail. The parties shall confer in good faith regarding the format of production. Petitioner is not required to create new data or perform forensic reconstruction beyond what is maintained in the ordinary course of business.

### 6.    Conclusion

Accordingly, Claimants' Motion to Compel (DE 103) is **GRANTED IN PART AND DENIED IN PART**.

### C.    Petitioner's Motion for Protective Order (DE 98)

Petitioner moves for a protective order limiting the scope of testimony from a certified public accountant concerning tax-related information, including questions regarding personal tax returns of individuals associated with Quantum Leap Charters, LLC. (DE 98.) The motion is unopposed. Under Rule 26(c), a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Even where a motion is unopposed, the Court must determine whether the movant has demonstrated good cause. The issue presented concerns whether a tax preparer may be compelled to testify regarding information contained in or derived from an individual's tax returns.

Federal law imposes significant restrictions on the disclosure of tax return information by tax preparers. *See* 26 U.S.C. § 7216. That statute makes it unlawful for a tax return preparer to knowingly or recklessly disclose or use tax return information without the taxpayer's consent, subject to limited exceptions. As a result,

17

compelled testimony from a tax preparer regarding such information may implicate statutory protections and expose the preparer to potential liability absent proper authorization. Here, the record reflects that Claimants sought to question a certified public accountant about whether certain financial items appeared on individuals' personal tax returns. Petitioner objected and instructed the witness not to answer on the basis that such testimony would disclose protected tax return information.

The Court finds that good cause exists under Rule 26(c) to limit this line of inquiry. Although financial information may be relevant to Claimants' theories of liability—including alter ego—the mechanism by which that information is sought matters. Testimony from a tax preparer regarding personal tax return information implicates distinct statutory protections that are not overcome by a showing of relevance alone.

This ruling does not foreclose discovery of otherwise relevant financial information through appropriate means, including requests directed to the parties themselves or through properly authorized disclosures. However, 26 U.S.C. § 7216 imposes significant restrictions on the disclosure of tax return information by preparers, subject to limited exceptions, including disclosure pursuant to a court order. Accordingly, the Court limits discovery to preclude such inquiry through testimony of a tax preparer absent taxpayer consent, a court order, or another applicable exception. Accordingly, Petitioner's Motion for Protective Order (DE 98) is **GRANTED**.

## IV.    CONCLUSION

For these reasons, it is hereby ORDERED that:

1.  Claimants' Motion to Amend (DE 91) is **GRANTED**;

2.  Claimants' Motion to Compel (DE 103) is **GRANTED IN PART AND DENIED IN PART** as set forth herein; and

3.  Petitioner's Motion for Protective Order (DE 98) is **GRANTED**.

The parties are directed to confer in good faith regarding the scope and format of any additional production required by this Order and to complete such production within a reasonable time.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

March 23, 2026
Florence, South Carolina

19